```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
                                          :
ZACHERY A. BRADLEY, ET AL                 :
                                          :
v.                                        :   CIV. NO. 3:06CV62 (WWE)
                                          :
FONTAINE TRAILER CO. INC.                 :
                                          :
                                          :
```

           RULING ON DEFENDANTS' MOTION TO COMPEL **[Doc. #64]**

     Defendant Fontaine Trailer Company moves to compel answers
to Interrogatories Nos. 1 and 2 and Requests for Production Nos.
1 and 2 contained in defendant's First Set of Interrogatories and
Requests for Production dated September 14, 2006.[1]

---

[1] The parties agree that the arguments made in support of and
in opposition to this motion to compel are also applicable to
defendant's Second Set of Interrogatories Nos. 2 and 9 and
Requests for Production Nos. 2, 13-17. [Doc. #75 at 3-4, n. 3].

Interrogatories,

    2.   Please describe any payments that you have
         received for any source for the losses sustained
         as a result of the accident involving the
         Chevrolet Tahoe.

    9.   Please identify any other lawsuit or claim that
         you made for damages sustained as a result of the
         accident involving the Chevrolet Tahoe.

Requests for Production,

    2.   All documents concerning the payments identified
         in response to the interrogatory no. 2.

    13.  All documents concerning any claims that you
         have made against any person or party that
         they are the cause, in whole or in part, of
         the accident complained of.

1

Interrogatories

1. Please identify any and all persons, including but not limited to parties to this action, who you currently contend or have previously contended were responsible, in whole or in part, for the accident involving the Chevrolet Tahoe.

2. With regard to each person identified in response to Interrogatory No. 1, please describe fully the way(s) in which you contend they were responsible for the accident.

Requests for Production

1. With regard to each person identified in response to Interrogatory No. 1, please produce any documents supporting your contention(s).

2. With regard to each person identified in response to Interrogatory No. 1, please produce any documents concerning your contention(s).

---

14. All letters by your, or by someone, including your attorney, who was acting on behalf of plaintiff's decedent, to any person or party claiming that said person or party was the cause, in whole or in part, of the accident complained of.

15. Copies of all complaints that you have filed against any person alleging that said person was the cause, in whole or in part, of the accident complained of.

16. All covenants not to sue or releases of claims that you have entered into with any person or party that relates to the accident involving the Chevrolet Tahoe.

17. Any documents concerning payments made to you or other representative of plaintiffs' decedent for damages arising from the accident involving the Chevrolet Tahoe.

Defendant seeks "information that was exchanged during mediation or as part of the settlement negotiations at a time closer to the accident," arguing that this information is "more reliable than some of the information that is now available. Also, it is likely that information regarding the settlement negotiations would be relevant to whether or not a witness is biased or prejudiced for or against one of the parties to this action." [Doc. #65 at 8]. Specifically, defendant seeks documents regarding confidential mediations between plaintiffs and Arrow Trucking Company, Inc., Armando Salgado, Aaron Kenneth, Maria Estrera, and the Estate of Sean Fenton. Fontaine seeks "not only the information and documents provided as part of the various mediations, but all information relating to plaintiffs' claims and contentions that others were responsible for the accident." [Doc. #75 at 2] (emphasis added).

Plaintiffs argue that the confidential mediation materials are protected by the mediation privilege of Conn. Gen. Stat. §52-235d and not discoverable under Fed. R. Evid. 408 and Fed. R. Civ. P. 26. The confidential mediation materials, exhibits 1 through 33, sought by Fontaine were provided to the Court for in camera review. Exhibits 34 through 37 were provided to defendant and are not confidential mediation materials.

Releases and Settlement Agreements

Plaintiffs do not oppose the production of the releases and settlement agreements which were the product of the confidential mediations, attached as exhibits 10-24 and 27-33 to plaintiffs'

3

memorandum. These documents were executed under an agreement that requires a court order for plaintiffs to disclose the documents. Accordingly, plaintiffs will produce exhibits 10-24 and 27-33, subject to a protective order.

<u>Confidential Mediation Materials</u>

Plaintiffs object to the production of the remaining materials created in connection with their confidential mediations, Pl. Ex. 1-9, 25 and 26.

Between June 2004 and December 2005, plaintiffs participated in non-court-ordered confidential mediation sessions with Arrow Trucking Company, Inc., Armando Salgado, and Aaron, Kenneth and Maria Estrera, and their insurers. Plaintiffs state that, "[t]he factual background for the mediation concerning liability was provided <u>solely</u> by the reports of the National Transit Safety Board ("NTSB") and the Connecticut State Police pertaining to the accident (together, the "Government Reports")." [Doc. #72 at 3, Pl. Ex. 34 and 35] (emphasis added). At oral argument, plaintiffs restated that there are no statements of fact from any plaintiff, explaining that the surviving passengers have no personal recollection of the accident, because they were sleeping at the time of impact or, because of severe brain trauma, they have no memory from that night. The only information regarding liability contained in the mediation materials, plaintiffs reiterated, was contained in the Government Reports. Finally, plaintiffs stated that they have already provided all the damages materials and analysis to defendant.

Defendant contends that the information it seeks is not contained in the NTSB or police reports and cannot be obtained from other sources. [Doc. #75 at 1-2]. Specifically, defendant argues it "wants to know, and is entitled to know," (1) "whether plaintiff's settlements with the two drivers involved in this accident include agreements that plaintiffs will indemnify the settled drivers should they be brought back into this litigation;" (2) "whether plaintiffs' settlements with the Estate of Fenton include an agreement, (written or understood), that any unpaid portions of those settlements will be satisfied from any recovery that the Estate of Fenton obtains from Fontaine or others"; (3) "whether the terms of plaintiffs' settlements would cause witnesses, including the plaintiffs, to be biased or prejudiced for or against one of the parties"; and (4) "how those settlements affect the viability and the strategic wisdom of bringing contribution or indemnity claims against the settled parties." Id.

Agreements to Indemnify

At oral argument, the plaintiffs represented that there are no agreements to indemnify. There were no "understandings" reached, either "formal or informal," "written or oral". There are no separate agreements. Everything the parties agreed to is contained in the settlement agreements.

In Camera Review

The Court reviewed the following documents in camera.
1. Exhibit 1 is a mediation statement prepared by the Estate of

Andrew Knox Dwyer consisting of a cover page, three (3) pages of text describing Mr. Dwyer, his life and his family, and six (6) pages of photos.

2. Exhibit 2 is a mediation statement prepared by Zachery A. Bradley consisting of seven (7) pages of text describing Mr. Bradley's life, injuries, medical treatment and economic damages.

3. Exhibit 3 is a mediation statement prepared by the Estate of Kyle Matthew Burnat consisting of a cover page, two (2) pages of text describing Mr. Burnat, his life and his accomplishments, and six (6) pages of photos.

4. Exhibit 4 is a mediation package prepared by the Estate of Sean Fenton consisting of a two (2) page cover letter to Judge Garfinkel, dated June 10, 2004, describing the contents of the mediation package, a twenty-three (23) page ex parte statement containing a description of the accident "taken from the preliminary NTSB report released in October 2003. Neither the final NTSB report nor the final Connecticut State Police report" had been released when the ex parte statement was prepared. Also a position statement on liability and a twenty-nine (29) page statement describing Mr. Fenton's life and his accomplishments, list of athletic awards, copies of web pages, articles, and photographs. Finally, the mediation packet contains a letter to Judge Garfinkel, dated June 14, 2004, supplementing the ex parte position statement.

5. Exhibit 5 is three (3) page mediation statement from Cameron Fine describing his life and summarizing his injuries.
6. Exhibit 6 is a mediation statement prepared by the Estate of Nicholas Grass consisting of four (4) pages of text describing Mr. Grass, his life and his accomplishments, and seventeen (17) pages of letters, articles and photos.
7. Exhibit 7 is a mediation statement prepared by Brett Smith consisting of a cover page, six (6) pages of text describing Mr. Smith, his life, accomplishments and injuries, and exhibit A listing his academic and athletic honors, community service and work experience.
8. Exhibit 8 is a mediation statement prepared by Eric W. Wenzel consisting of a cover page, seven (7) pages of text describing Mr. Wenzel, his life, accomplishments, injuries and damages.
9. Exhibit 9 was not submitted to the Court.
10. Exhibit 25 is a Mediation Memorandum from plaintiffs' Estate of Nicolas Grass, Brett Smith, Estate of Kyle Burnat, Estate of Andrew Dwyer, Zachery Bradley, Cameron Fine and Eric Wenzel submitted in settlement negotiations with Federal Insurance Company, one of the Chubb Group of Insurance Companies ("Chubb"). The mediation statement consists of a cover page and a thirty-three (33) page position statement on the plaintiffs' legal position on Chubb's insurance coverage with exhibits A-L. Exhibit A is a copy of the Chubb Masterpiece Policy issued to the Fentons. Exhibit B is a

copy of the Chubb's July 8, 2004, letter, denying the Fentons's request for coverage. Exhibit C is excerpts from the NTSB Report. Exhibit D is the passenger plaintiffs' damages materials. Exhibit E is copies of the passenger plaintiffs' Settlement Agreements and Covenants Not to Sue with the Estate of Sean Fenton, State Farm and State Farm's insureds with a copy of Judge Droney's November 3, 2005 Order. Exhibit F contains two representative complaints filed by the passenger plaintiffs against Chubb. Exhibit G is a copy of the Universal Policy that was issued to an auto dealership which provided the Fentons with an automobile for their use. Exhibit H is copies of General Releases by the Estate of Nicholas Grass, Estate of Bret Smith, Estate of Kyle Burnat, Estate of Andrew K. Dwyer, Zachary A. Bradley, Cameron Fine, and Eric W. Wenzel to Armando Salgado, Arrow Trucking Company, Inc., Piel Corporation, Arrow Truck Leasing Corporation. Exhibit I is a copy of Conn. Gen. Stat. §14-1(a). Exhibit J is a copy of Conn. Gen. Stat. §38-363(e). Exhibit K is a copy of California Insurance Code §660. Exhibit L is a copy of California Vehicle Code §27315.

11. Exhibit 26 is a mediation statement prepared by Federal Insurance Company, one of the Chubb Group of Insurance Companies ("Chubb"), the issuer of the homeowner's policy that was issued to Robert and Janice Fenton, parents of Sean Fenton, the driver of the Chevrolet Tahoe. The mediation

8

statement consists of a cover page and a thirty-three (33) page position statement on the insurance company's legal position on coverage.

Authority

Defendant argues that the mediation materials are discoverable under Fed. R. Civ. P. 26, as the information is "reasonably calculated to lead to the discovery of admissible evidence." Nevertheless, one category of information that is generally exempt or protected from the liberal rules of discovery is information regarding mediation. See Fed. R. Evid. 408 and Conn. Gen. Stat. §52-235d (recognizing mediation privilege).[2] Plaintiff maintains that the confidential mediation materials sought by defendant are protected by the mediation privilege of Conn. Gen. Stat. §52-235d and are not discoverable under Fed. R. Evid. 408 and Fed. R. Civ. P. 26. Defendant does not dispute that the mediation privilege applies to the materials it seeks, but argues that the materials fall within the "interests of justice" exception contained in §52-235d(b)(4).

Connecticut General Statute §52-235d prohibits the disclosure of oral or written communications received or obtained during the course of mediation, unless

> (1) each of the parties agrees in writing to such disclosure, (2) the disclosure is necessary to enforce a written agreement that came out of the mediation, (3) the disclosure is required by statute or regulation, or by

---

[2] The parties agree that the application of the mediation privilege is governed by state law. [Doc. #65 at 13, n.6; doc. #72 at 7, n.12].

9

> any court, after notice to all parties to the
> mediation, or (4) the disclosure is required
> as a result of circumstances in which a court
> finds that the interest of justice outweighs
> the need for confidentiality, consistent with
> the principles of law.

Conn. Gen. Stat. 52-235d(b). Section 52-235d further provides:

> (d) Nothing in this section shall prevent (1)
> the discovery or admissibility of any
> evidence that is otherwise discoverable
> merely because such evidence was presented
> during the course of the mediation, . . . .

Defendant argues that "disclosure of the settlement agreement and of communications that took place before and during the course of the mediation is required so that the defendant can properly evaluate any third party claims, can determine whether any witnesses are biased or prejudiced for or against a party, and can gain access to earlier statements or claims regarding the accident." [Doc. #65 at 14-15]. As stated, plaintiffs do not oppose the production of the releases and settlement agreements which were the product of the confidential mediations, attached as exhibits 10-24 and 27-33 to plaintiffs' memorandum, pursuant to a protective order and by order of the court.

Since plaintiffs agree to provide copies of the settlement agreements, the narrower question before the Court is whether the <u>ex parte</u> settlement statements and materials provided to the settlement judge and/or mediator should be disclosed pursuant to the liberal standard set forth in Rule 26 ("reasonably calculated to lead to the discovery of admissible evidence") or subject to application of a heightened standard of review as set forth in Conn. Gen. Stat. §52-535d(b)(4) ("the interests of justice

10

outweighs the need for confidentiality") and ABF Capital Management v. Askin Capital Mgt., Nos. 96 Civ. 2978, 95 Civ. 8905, 97 Civ. 1856, 97 Civ. 4335, 98 Civ. 6178, 98 Civ. 7494, 2000 WL 1911690, *2 (S.D.N.Y. Feb. 10, 2000) (in considering relevancy under Rule 26, the court conducted an in camera review of the settlement agreement). None of defendant's cases addresses this particular issue, nor do they seek to reconcile the rule set forth in Conn. Gen. Stat. §52-535d(b)(4) with Fed. R. Civ. P. 26 and Fed. R. Evid. 408. See also New Horizon Financial Services, LLC v. First Financial Equities, Inc., 278 F. Supp. 2d 259 (D. Conn. 2003) (seeking testimony from the settlement judge in an action to enforce a settlement agreement under Conn. Gen. Stat. §52-535d); Sharon Motor Lodge, Inc. v. Tai, No. CV980077828S, 2001 WL 1659516, *1 (Conn. Super. Ct. Dec. 3, 2001) (same).

The Court has considered all of the parties' competing arguments and cases in reaching this decision. Upon careful consideration the Court finds that pursuant to Conn. Gen. Stat. §52-235d(b)(4), defendant has not shown that the "interests of justice outweighs the need for confidentiality" to support disclosure of these mediation materials. In reaching this decision, the Court has carefully considered defendant's argument and conducted an in camera review of the mediation materials. Mediation materials have a special significance in the mediation process which requires heightened protection to preserve the value of the mediation process. The parties must trust that their disclosures, both oral and written, during mediation will remain

confidential and that their candor will be protected. Sharon Motor Lodge, 2001 WL 1659516, *2 ("The court recognizes the importance of preserving the candidness of discussion that take place during a mediation and maintaining the integrity and confidentiality of the mediation process."). Mediation materials are clearly distinguishable from a settlement agreement where the parties have reduced their agreement to writing. See Sharon Motor Lodge, 2001 WL 1659516, *2 ("The disclosure of communications from settlement negotiations is not what is being asked of the court in this case."); Tribune Co. v. Purcigliotti, No. 93 Civ. 7222, 1996 WL 337277, *4, n.1 ("In their submissions, the parties have failed to specifically address the issue of the discoverablity of other settlement-related documents, apparently operating on the assumption that any ruling relating to the settlement agreement applies equally to all settlement-related communications. The Court can conceive of distinctions both in the relevance of such documents and the interest in protecting them.").

A party may obtain privileged mediation communications under §52-235d(b)(4), "if the party shows that it has a substantial need for the materials, i.e., that the materials are essential to its claims or defenses, that it would suffer undue hardship if the materials were not disclosed, and that these two considerations outweigh the interests of preserving the confidentiality of the communications. This standard balances the public interest in protecting the confidentiality of the

settlement process and countervailing interests, such as the right to every person's evidence." <u>Sharon Motor Lodge v. Tai</u>, No. CV 980077828S, 2006 WL 696320, * 9 (Conn. Super. Ct. Mar. 1, 2006) (quotation marks and citation omitted). In applying this standard the Court carefully considered defendant's need to obtain evidence to support its defense. Here, plaintiffs agree to provide copies of the settlement agreements and represented at oral argument that there are no other side agreements, oral or written. The Court's <u>in camera</u> review of the mediation materials confirms there are no written indemnity agreements. Plaintiffs previously provided defendant with their damages materials. Plaintiffs also represented at oral argument that any factual statements/descriptions of the accident contained in the mediation materials were excerpted from the Government reports. Plaintiffs represented that the surviving plaintiffs have no recollection of the accident and did not provide a witness statement in the mediation materials. The Court's <u>in camera</u> review confirms this representation. Defendant has not shown that its need for the information outweighs the "interests of preserving the confidentiality of the communications." <u>Sharon Motor Lodge</u>, 2006 WL 696320, *9.

In addition to the Connecticut mediation privilege, Rule 408 of the Federal Rules of Evidence limits the introduction at trial of evidence regarding settlement negotiations.[3] "This rule,

---

[3]Rule 408 states,

    (a) Prohibited uses.-Evidence of the

however, only applies to the admissibility of evidence at trial, not to discovery." <u>Securities and Exchange Commission v. Downe</u>, No. 92 Civ. 4092, 1994 WL 23141, * (S.D.N.Y. Jan. 27, 1994) (citations omitted). Plaintiffs contend that defendant is unable to make a "particularized showing" of relevance to obtain discovery of settlement-related materials, because the mediation materials at issue are unlikely to lead to the discovery of admissible evidence, citing <u>Bottaro v. Hatton Associates</u>, 96 F.R.D. 158, 160 (E.D.N.Y. 1982).

---

> following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity, or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> (1) furnishing or offering or promising to furnish-or accepting or offering or promising to accept-a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.
>
> (b) Permitted uses.-This rule does not require exclusion of the evidence if offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

Defendant's cases seeking to distinguish Bottaro[4] offer little guidance and are distinguishable on their facts. See Rates Technology Inc. v. Cablevision Systems Corp., No. 05-CV-3583, 2006 WL 3050879, * (E.D.N.Y. Oct. 20, 2006) (seeking copy of settlement agreement); ABF Capital Management v. Askin Capital Mgt., Nos. 96 Civ. 2978, 95 Civ. 8905, 97 Civ. 1856, 97 Civ. 4335, 98 Civ. 6178, 98 Civ. 7494, 2000 WL 1911690, *1 (S.D.N.Y. Feb. 10, 2000) (moving to compel disclosure of settlement agreement as well as "all non-privileged settlement related documents" the court denied disclosure pursuant to Fed. R. Civ. P. 26 as not relevant); Salgado v. Club Quarters, Inc., No. 96CIV.383, 1997 WL 269509, *1 (S.D.N.Y. May 20, 1997) (agreeing with authorities that "no privilege attaches to settlement agreements and that no heightened showing need be made to justify discovery of a settlement agreement.").

A careful reading of ABF Capital Management is instructive. In ABF Capital Management, defendant Kidder Peabody & Co. ("Kidder") moved to compel the disclosure of a settlement agreement between plaintiff and defendant Bear Sterns & Co. ("Bear Sterns"), as well as "all non-privileged settlement-related documents." 2000 WL 191698, *1. It is noted that, although defendant sought "all non-privileged settlement related documents," neither the court or defendant distinguished the

---

[4] In Bottaro v. Hatton Associates, 96 F.R.D. 158 (E.D.N.Y. 1982) the court held that discovery of settlement negotiations requires a "particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement." Id. at 160.

15

settlement agreement from "settlement materials" or "related documents." There was no description or list of the settlement-related documents and the court only conducted in camera review of the settlement agreement. 2000 WL 191698, *3, n.1. Nevertheless, the Court denied the motion to compel, applying the Rule 26 standard stating, "[a]lthough litigants cannot shield a settlement agreement from discovery merely because it contains a confidentiality provision, or was filed under seal, discovery of such an agreement is only appropriate if it is itself relevant to the subject matter of the action, or is likely to lead to relevant evidence." ABF Capital Management, 2000 WL 191698, *2 (citations omitted). The court added, "even if the Settlement Agreement contained admissions, which it does not, Rule 408 of the Federal Rules of Evidence would prevent the introduction at trial of settlement-related materials to prove or disprove liability." 2000 WL 191698, *2. The court acknowledged that, "settlement information may be discoverable when a party seeks that information primarily for its impeachment value, i.e., to establish bias of a settling co-defendant." 2000 WL 191698, *2 (citation omitted). "However, such information concerning bias and interest is not relevant in and of itself. Rather, such information is potentially relevant because of a settling co-defendant's contemplated cooperation, at trial, with his or her former adversary." 2000 WL 191698, *3. The ABF Capital Management plaintiffs asserted, and the court's in camera review confirmed, that "they did not plan to call any Bear Stearns

16

witnesses, that the Settlement Agreement at issue contains no provision concerning future testimony, and that the agreement contains no admissions on the part of Bear Stearns." Id.

CONCLUSION

Accordingly, defendants' Motion to Compel **[doc. #64]** is **DENIED.** Plaintiffs will produce exhibits 10-24 and 27-33 subject to a protective order.

This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. §636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

ENTERED at Bridgeport this 10th day of July 2007.

___/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE