UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZACHERY A. BRADLEY; BARBARA S. MILLER and LAWRENCE BURNAT, as Administrators of the Estate of KYLE BURNAT; ANDREW T. DWYER and CYNTHIA DWYER, as Co-Executors of the Estate of ANDREW K. DWYER; HARRY HIRSCH and ROBERT FENTON, as Administrators of the Estate of SEAN FENTON; CAMERON FINE; MARC J. GRENIER, as Administrator of the Estate of NICHOLAS G. GRASS; BRUCE SMITH and DARLENE SMITH, as Conservators of the Estate of Brett Smith; and ERIC W. WENZEL,<br>        Plaintiffs,<br><br>v.<br><br>FONTAINE TRAILER COMPANY, INC.,<br>        Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:    3:06-cv-62 (WWE)<br>:<br>:<br>: |

**MEMORANDUM OF DECISION ON PLAINTIFFS'
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

This matter arises from a motor vehicle collision between an automobile in which plaintiffs and plaintiffs' decedents ("plaintiffs") were traveling and a flatbed truck owned by defendant. Plaintiffs each assert a claim under the Connecticut Product Liability Act, Conn. Gen. Stat. § 52-572n, et seq. ("CPLA"). They now move for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to three of defendant's affirmative defenses pleaded in the answer. For the reasons that follow, plaintiffs' motion will be granted in part and denied in part.

The Court has jurisdiction over plaintiffs' claim pursuant to 28 U.S.C. § 1332.

**BACKGROUND**

For purposes of ruling on this motion for partial judgment on the pleadings, the Court accepts all allegations of the complaint as true.

On January 17, 2003, at approximately 4:50 a.m., Armando Salgado was driving a 1996 Freightliner Tractor with a 2000 Fontaine Flatbed Semi-Trailer Combination Unit ("tractor trailer") northbound on Interstate 95 near Fairfield, Connecticut. Defendant Fontaine Trailer Company, Inc. designed, manufactured, sold and provided customer support for the tractor trailer that Salgado was driving. As a result of snow and ice accumulation on the highway, the fact that the overhead lights on the highway were not operative and the insufficiency of the temporary concrete median separating the northbound and southbound lanes of the highway, Salgado's tractor trailer crashed into and partially over the concrete median. In the collision, the tractor became separated from the trailer, and the trailer protruded onto the northbound travel lanes of the highway. Because of the conditions at the time, the trailer was not adequately visible to northbound travelers to allow them to take precautionary measures to avoid the trailer.

Several minutes later, plaintiffs and their decedents were driving northbound on Interstate 95 in a 1999 Chevrolet Tahoe SUV when their vehicle collided with the trailer on the northbound side of the interstate. As a result of the collision, plaintiffs Zachary A. Bradley, Cameron Fine, Brett Smith and Eric W. Wenzel suffered serious physical injuries while plaintiffs Kyle Burnatt, Andrew K. Dwyer, Sean Fenton and Nicholas G. Grass were killed.

Plaintiffs' complaint asserts a product liability cause of action under the CPLA on behalf of each plaintiff, contending that the tractor trailer was unreasonably dangerous

for its normal and intended use.  In its answer, defendant asserted twelve affirmative defenses, three of which are relevant to the current motion.  These are as follows:

> Fourth Affirmative Defense - Fontaine complied fully with Federal Motor Vehicle Safety Standard 108, as promulgated by the Administrator of the National Highway Safety Administration (NHTSA).  Accordingly, the plaintiffs' claims are impliedly preempted by federal law.
>
> Fifth Affirmative Defense – The plaintiffs' claims are expressly preempted by federal law, including Federal Motor Vehicle Safety Standard 108 promulgated by the Administrator of the National Highway Safety Administration (NHTSA), with which Fontaine fully complied.
>
> Sixth Affirmative Defense – The injuries and damages as alleged are not the result of Fontaine's actions or omissions because Fontaine conformed to applicable federal statutes, regulations or standards and/or industry standards existing at the time of the design and/or manufacture of its flatbed trailer.

Plaintiffs move for partial judgment on the pleadings, seeking to strike these three affirmative defenses from defendant's answer.

## DISCUSSION

A motion for judgment on the pleadings under Rule 12(c) is evaluated like a motion to dismiss pursuant to rule 12(b)(6).  Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).  Like a motion to dismiss, it is meant "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) (referring to motion to dismiss).  When deciding a rule 12(c) motion, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  Hishon v. King, 467 U.S. 69, 73 (1984) (referring to motion to dismiss).

Plaintiffs contend that the Court should grant judgment on the Fourth, Fifth and Sixth Affirmative Defenses of defendant's answer because the CPLA has not been preempted by any federal law or regulation, including Federal Motor Vehicle Safety Standard 108 ("Standard 108"). Defendant argue, in response, that (1) the motion is premature because preemption by Standard 108 turns on the actual safety feature that plaintiffs propose was lacking; (2) plaintiffs should have filed their motion as one to strike under rule 12(f) of the Federal Rules of Civil Procedure, rather than under rule 12(c); (3) if the Court were to construe plaintiffs' motion as one to strike under rule 12(f), it would be untimely; and (4) the current version of Standard 108 would likely preempt any state law claim.

**I.    Applicability of Rule 12(c) to Motion for Partial Judgment on the Pleadings**

Defendant's second argument against plaintiffs' motion would render plaintiff's motion moot as improper. Because this is not on the merits of the argument, the Court will address it first.

Rule 12(c) of the Federal Rules of Civil Procedure provides that "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Like on a 12(b) motion, the court must accept all of the non-movant's allegations as true. Carmen v. San Francisco Unified Sch. Dist., 982 F. Supp. 1396, 1401 (N.D. Cal. 1997).

The Court held in Dysart v. Remington Rand, Inc. that a rule 12(c) motion was not the appropriate vehicle to challenge only some, and not all, of defendant's asserted special defenses because judgment could not enter if plaintiff's motion was granted. If the Court had granted plaintiff's motion, it stated, there still would have remained the

4

unchallenged general denial of plaintiff's allegations.  Dysart, 31 F. Supp. 296, 297 (D. Conn. 1939); see also 5C C. Wright & A. Miller, Federal Practice & Procedure 3d § 1369, at 260-61 (2004).  Wright & Miller instructs that "if a plaintiff seeks to dispute the legal sufficiency of fewer than all of the defenses raised in the defendant's pleading, he should proceed under Rule 12(f) rather than under Rule 12(c) because the latter leads to the entry of a judgment."  Id. at 260.

Notwithstanding this, Wright & Miller observe that contemporary courts have granted partial motions for judgment on the pleadings.  See, e.g., VNA Plus, Inc. v. Apria Healthcare Group, Inc., 29 F. Supp. 2d 1253, 1258 (D. Kan. 1998); Chi-Mil Corp. v. W. T. Grant Co., 70 F.R.D. 352, 357-58 (E.D. Wis. 1976).  In both VNA Plus and Chi-Mil, the courts analogized a rule 12(c) motion to a motion for summary judgment under rule 56; because there could be a partial summary judgment, the courts concluded that there could also be partial judgment on the pleadings.  Although VNA Plus and Chi-Mil involve defendants' challenge to the complaint, the Court finds these holdings applicable to the instant case, where plaintiffs seek to strike defendant's affirmative defense.  Since the modern view of rule 12(c) is to permit a motion for partial judgment on the pleadings, plaintiffs' motion was correctly and timely filed before the Court.

## II.     Preemption Under the Safety Act

Defendant contends that plaintiffs' motion is premature at this point because plaintiffs have yet to specifically identify how the tractor trailer was defective.  Defendant argues that whether there is federal preemption of the CPLA turns on the alleged defect and how such defect could be rectified.

### A. Preemption Doctrine

The Supremacy Clause of the United States Constitution "invalidates state laws that 'interfere with, or are contrary to,' federal law." Hillsborough County v. Automated Medical Laboratories, Inc., 471 U.S. 707, 712 (1985). Congressional intent is the "ultimate touchstone" in any preemption case. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996). Federal preemption may either be express or implied. Air Transp. Ass'n of Am. v. Cuomo, 520 F.3d 218, 220 (2d Cir. 2008). Express preemption arises when Congress explicitly defines how its statute affects state law, English v. General Elec. Co., 496 U.S. 72, 78 (1990), and is a function of Congressional intent. Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299 (1988). Where Congress has spoken explicitly, determining its intent is easy. English, 496 U.S. at 79 ("[W]hen Congress has made its intent known through explicit statutory language, the courts' task is an easy one.").

Implied preemption of state law arises when Congress has either occupied a field of law exclusively – implicit "field" preemption – or a state law actually conflicts with a Congressional enactment – implicit "conflict" preemption. Air Transp. Ass'n of Am., 520 F.3d at 220. Field preemption is "inferred where the field is one in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Hillsborough County, 471 U.S. at 713. A state law can conflict with federal law in two ways. First, if compliance with federal and state law is physically impossible, then the state law is preempted. See Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 (1963). Second, a state law is preempted where the "law stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67 (1941).

### B. The Safety Act and Standard 108

Standard 108 was promulgated by the National Highway Traffic Safety Administration pursuant to the National Traffic and Motor Vehicle Safety Act of 1966, 49 U.S.C. § 30101, et seq. ("Safety Act"). Its purpose is to "reduce traffic accidents and deaths and injuries resulting from traffic accidents" by "prescrib[ing] motor vehicle safety standards for motor vehicles and motor vehicle equipment." 49 U.S.C. § 30101. A "motor vehicle safety standard" is, by definition, a minimum standard. Id. § 30102(a)(9).

Regarding preemption, the Safety Act provides:

> When a motor vehicle safety standard is in effect under this chapter, a State ... may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter. However, the United States Government, a State, or a political subdivision of a State may prescribe a standard for a motor vehicle or motor vehicle equipment obtained for its own use that imposes a higher performance requirement than that required by the otherwise applicable standard under this chapter.

Id. § 30103(b)(1). Despite this language, Congress provided that "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." Id. § 30103(e). As the Supreme Court has stated:

> The saving clause assumes that there are some significant number of common-law liability cases to save. And a reading of the express pre-emption provision that excludes common-law tort actions gives actual meaning to the saving clause's literal language, while leaving adequate room for state tort law to operate – for example, where federal law creates only a floor, i.e., a minimum safety standard.

7

Geier v. Am. Honda Motor Co., 529 U.S. 861, 868 (2000).

The Secretary of Transportation is authorized to promulgate regulations related to the Safety Act. 49 U.S.C. § 30111(a). Standard 108 is the exercise of such authority and provides "requirements for original and replacement lamps, reflective devices, and associated equipment." 49 C.F.R. § 571.108, S1 (2008). Its purpose is:

> to reduce traffic accidents and deaths and injuries resulting from traffic accidents, by providing adequate illumination of the roadway, and by enhancing the conspicuity of motor vehicles on the public roads so that their presence is perceived and their signals understood, both in daylight and in darkness or other conditions of reduced visibility.

Id. § 571.108, S2. As to some lighting requirements, Standard 108 provides minimum, yet limited, standards. See id. §§ 571.108, S5 ("[E]ach vehicle shall be equipped with at least the number of lamps, reflective devices, and associated equipment specified in Table[ I]...."); S5.1.3 ("No additional lamp, reflective device or other motor vehicle equipment shall be installed that impairs the effectiveness of lighting equipment required by this standard.").

Construing Standard 108, the Third Circuit Court of Appeals in Buzzard v. Roadrunner Trucking, Inc. concluded that this regulation creates a floor that state law can exceed. Such excess regulation, however, did not "permit states to impose lighting requirements that would interfere with the illumination given by the equipment Standard 108 requires." Buzzard, 966 F.2d 777, 784 (3d Cir. 1992). The court continued, stating that the Safety Act and Standard 108 did "not wholly preclude a state court from ruling [defendant]'s failure to include additional illumination equipment that would further the Safety Act's prime purpose of safety was a design defect for which [defendant] would

be liable under the common law." Id. (emphasis added); see also Great Dane Trailers, Inc. v. Estate of Wells, 52 S.W.3d 737, 748 (Tex. 2001) ("Standard 108 ... does not impliedly preempt common-law claims about insufficient trailer conspicuity.").

### C.  Connecticut Product Liability Act

The CPLA allows a cause of action for damages for a product defect. Conn. Gen. Stat. § 52-572n. "A product may be defective due to a flaw in the manufacturing process, a design defect or because of inadequate warnings or instructions." Vitanza v. Upjohn Co., 257 Conn. 365, 373 (2001). A manufacturer is strictly liable for injuries suffered if the product "in a defective condition unreasonably dangerous to the user...." Restatement (Second) of Torts § 402A.

### III.  Whether Plaintiffs' Claims are Preempted

The language of section 30103(e) and Geier as well as Standard 108 supports the notion that Congress has allowed the states, whether through explicit legislative enactments or through the development of common law rules, to set safety standards stricter than what Congress has set. Under the Safety Act and Standard 108, Congress has not banned states from creating stricter standards than what it has set like it has in other contexts. Compare 49 C.F.R. § 571.108, S5 ("[E]ach vehicle shall be equipped with at least the number of lamps, reflective devices, and associated equipment specified in Table[ ] I....") (emphasis added) with Air Transp. Ass'n of Am., 520 F.3d 218 (addressing Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1) ("Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having

the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.")).  In light of this, there can be no express preemption in this case.  The Court will grant plaintiffs' motion as to the Fifth Affirmative Defense alleging express preemption.[1]

Standard 108 is a floor.  Therefore, it is possible for defendant to proffer evidence that plaintiffs' claims under the CPLA that the tractor trailer was lacking additional lighting or other modifications to increase its visibility are implicitly preempted by the Safety Act and Standard 108.  Conflict preemption may apply if Fontaine cannot meet both the federal requirements and remedy whatever defect plaintiffs suggest the tractor trailer had.  See Freightliner Corp. v. Myrick, 514 U.S. 280, 286 (1995); Buzzard, 966 F.2d at 781 ("Buzzard's common law claims would be in actual conflict with federal law if they prevented Fruehauf from feasibly complying with both federal and state law or frustrated the purpose of the Safety Act and Standard 108."); see also Wyeth v. Levine, No. 06-1249, ____ U.S. ____, 2009 U.S. LEXIS 1774, 2009 WL 529172 (Mar. 4, 2009) (discussing preemption based on impossibility with regard to pharmaceutical warnings and the Food and Drug Administration's labeling requirements).  If, for example, plaintiffs contend that the tractor trailer should have klieg lights to increase its visibility, plaintiffs' suggestion would likely be preempted by Standard 108's prohibition against installing additional lighting that would impair the lighting prescribed by Standard 108 itself.  See 49 C.F.R. § 571.108, S4.1.3.

---

[1] Despite the dicta in Harris v. Great Dane Trailers, Inc., the Court does not view the amendments to Standard 108 as affecting the preemptive nature of Standard 108.  See Harris, 234 F.3d 398, 403-04 (8th Cir. 2000).

Defendant's affirmative defenses may prove fruitless. The design defect that plaintiffs suggest may be reasonable in light of the evidence and not interfere with the aims of the Safety Act. At this stage, however, without more evidence concerning any such safety modifications, the Court cannot grant plaintiffs' motion as to defendant's Fourth and Sixth Affirmative Defenses. It may be possible for defendant to demonstrate, based on plaintiffs' arguments, that plaintiffs' claims are preempted by Standard 108. See Harris, 234 F.3d at 402 (reversing district court's grant of summary judgment on product liability claim against trailer manufacturer because whether a claim is preempted "is a fact intensive question that cannot be determined at this preliminary stage of the litigation"); see also Searles v. First Fortis Life Ins. Co., 98 F. Supp. 2d 456, 463 (S.D.N.Y. 2000) (denying motion to strike affirmative defense as premature where relevance of such defense was not yet apparent).

Plaintiffs have filed a supplemental memorandum of support of their motion, citing the Supreme Court's recent opinion in Wyeth. The Supreme Court ruled in Wyeth that plaintiff's state law negligence and strict liability claims were not preempted by the FDA's labeling requirement. Wyeth, 2009 U.S. LEXIS 1774, *45. Wyeth was an appeal of a jury verdict after plaintiff had specifically identified the defect in defendant's drug labeling. Wyeth's holding, while instructive, does not dispose of the matter in this case because this dispute has arisen before the parties have completed discovery.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for partial judgment on the pleadings (Doc. #141) is GRANTED as to defendant's Fifth Affirmative Defense and DENIED as to defendant's Fourth and Sixth Affirmative Defenses.  Defendant is instructed to file an amended answer within ten days of the filing of this order.

Dated at Bridgeport, Connecticut, this 20th day of March, 2009.

                                               /s/
                                        Warren W. Eginton
                                        Senior United States District Judge