UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

====================================
ZACHERY A. BRADLEY, et al.,      X
                                 X
                                 X    3:06-CV-00062 (WWE)
            Plaintiffs,          X
V.                               X
                                 X
FONTAINE TRAILER COMPANY,        X
                                 X
            Defendant.           X
                                 X    April 12, 2012
====================================

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE REGARDING THE FEDERAL MOTOR CARRIER SAFETY REGULATIONS</u>**

**I.    INTRODUCTION**

This case arises out of a series of accidents that occurred in the early morning hours of January 17, 2003 on Interstate 95 in Fairfield. At approximately 4:50 a.m., Armando Salgado, the driver of a Freightliner tractor that was hauling a 2000 Fontaine Flatbed Semi-Trailer, lost control and overrode the concrete median barrier separating the north and south-bound lanes of travel. The tractor separated from the trailer, thereby cutting off the power to the trailer lights, and the trailer was left straddling the median barrier, partially obstructing the left lane of I-95 North. Eleven minutes later, an SUV driven by Sean Fenton and carrying eight passengers collided with the trailer. Sean Fenton and three passengers died and four of the passengers were injured.

Thereafter, the decedents' estates and the four injured passengers brought this product liability action against Fontaine Trailer Company ("Fontaine") alleging that the trailer was defectively designed because it did not have a breakaway lighting device that could sense a separation and maintain power to the trailer's lights. Fontaine expects that Plaintiffs will contend that the design of the Fontaine trailer violates one or more of the Federal Motor Carrier Safety Administration Regulations ("FMCSA Regulations"), and will attempt to present evidence and argument regarding these claimed violations as evidence of a defect.

Fontaine asserts that Plaintiffs' claims regarding the FMCSA must be excluded for three reasons. First, the FMCSA Regulations do not apply to a vehicle manufacturer such as Fontaine, or to the manufacture of trailers generally, as a matter of law. *See* 49 U.S.C. § 31147(b) ("This subchapter does not authorize the Secretary to regulate the manufacture of commercial motor vehicles for any purpose, including fuel economy, safety, or emission control."). Second, the FMCSA regulations relied on by the Plaintiffs regulate the condition of a trailer in the ordinary course of its use, not a trailer that has been seriously damaged in an accident. Third, as a matter of law, the FMCSA could not have promulgated a regulation pertaining to the safety of the design, construction or performance of a motor vehicle that differs from that of the National Highway Safety Administration ("NHTSA"), another administration under the umbrella of the Department of Transportation. *See* 49 U.S.C. § 30103(a) (entitled "Uniformity of Regulations" and providing that "[t]he Secretary of Transportation may not prescribe a safety regulation related to a motor vehicle . . . that differs from a motor vehicle safety standard prescribed under [NHTSA's regulatory framework].").

CARMODY & TORRANCE LLP
{W2083933} Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

2

Instead, the FMCSA Regulations regulate the conduct of motor carrier[1] employees so as to supplement the intrinsic safety mechanisms of the motor vehicle as regulated by NHTSA. Specifically, NHTSA provides for the use of retroreflective tape on trailers, and the FMCSA requires motor carrier employees to place flares and reflective triangles in the road in the event of an accident.[2] These two sets of regulations work in tandem to optimize safety from these two different perspectives: the design of the vehicle itself from NHTSA's perspective and the maintenance/ operation of the vehicle from the FMCSA's perspective. The Plaintiffs' efforts to creatively interpret the FMCSA Regulations to require a specific design for trailers to provide for break-away lighting ignores the fundamental division of powers and the coherent and complementary nature of these two sets of laws.

In addition to excluding Plaintiffs' evidence on relevancy grounds, Fontaine submits that allowing Plaintiffs to elicit testimony or submit argument to the jury regarding the FMCSA Regulations would unfairly prejudice Fontaine, confuse the issues, and mislead the jury.

## II. THE LEGAL STANDARD

"The court must decide any preliminary question about whether ... evidence is admissible." Fed. R. Evid. 104(a).[3] "To the extent practicable, the court must conduct a

---

[1] A motor carrier is one who provides motor vehicle transportation for compensation. 49 U.S.C. § 13102(14).
[2] See 49 C.F.R. § 571.108 (requiring the use of "retroreflective sheeting"); 49 C.F.R. § 392.22; 49 C.F.R. § 393.95 (requiring the use of "three bidirectional emergency use reflective triangles" and "3 liquid burning flares").
[3] Pursuant to the Rules Enabling Act, 28 U.S.C. §§ 2071-77, numerous stylistic changes were made to the Federal Rules of Evidence, effective December 1, 2011.

jury trial so that inadmissible evidence is not suggested to the jury by any means." Fed. R. Evid. 103(d).[4]

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The applicability of a body of law to a party is a question of law for the Court. *Nationwide Transportation Finance v. Cass Information Sys, Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008). The question presented in *Cass* was whether Article 9 of the Uniform Commercial Code applied to the defendant Cass, in view of its relationship with an account debtor. *Id.* The District Court excluded evidence regarding Article 9 based on a finding, as a matter of law, that Article 9 did not apply to Cass and therefore was not "relevant to proving to proving that Cass had engaged in improper conduct, a necessary element of Nationwide's [intentional interference with contractual relations] claims." *Id.* The Ninth Circuit affirmed, also recognizing that evidence "relating to erroneous or inapplicable legal theories" "may confuse or mislead the jury." *Id.*; *see also id.* at 1063. Likewise, here, the applicability of the FMCSA to Fontaine and its bearing on the issues in this case is a pure question of law for this court. Allowing Plaintiffs to discuss the

---

[4] The provisions in Fed. R. Evid. 103(d) were previously contained in Rule 103(c).

CARMODY & TORRANCE LLP
Attorneys at Law
{W2085933}

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

4

FMCSA Regulations as part of their claim against Fontaine, thereby suggesting that they apply to Fontaine, would only risk confusing the jury.

### III. ARGUMENT

#### A. The Regulatory Background.

Throughout the pendency of this case, the issue of compliance with NHTSA Regulations has been at the forefront. NHTSA Regulations apply to vehicle manufacturers, such as Fontaine, and Fontaine has consistently maintained that compliance with these Regulations would preempt the application of state products liability law and/or that Plaintiffs' proposed regulation would violate the dormant Commerce Clause of the Constitution. However, of late, and during the recent depositions of Fontaine's expert witnesses, the Plaintiffs have evidenced an intent to rely upon the FMCSA Regulations as part of their case in chief.[5] Such reliance is certainly improper because the FMCSA regulates motor carriers, not vehicle manufacturers, and because the FMCSA Regulations relied upon by the Plaintiffs do not apply in the circumstances of this case as a matter of law.

The Department of Transportation comprises two agencies whose functions are the regulation of two different aspects of interstate commercial transportation. *Compare* 49

---

[5] Fontaine anticipates that Plaintiffs will attempt to argue that the trailer did not comply with FMCSA Regulations, particularly 49 C.F.R. § 393.9 ("All lamps required by this subpart shall be capable of being operated at all times."); 49 C.F.R. § 393.19 ("The hazard warning signal operating unit on each commercial motor vehicle shall operate independently of the ignition or equivalent switch, and when activated, cause all turn signals required by §393.11 to flash simultaneously"); and 49 C.F.R. § 392.22 ("Whenever a commercial motor vehicle is stopped upon the traveled portion of a highway or the shoulder of a highway for any cause other than necessary traffic stops, the driver of the stopped commercial motor vehicle shall immediately activate the vehicular hazard warning signal flashers and continue the flashing until the driver places the warning devices required by paragraph (b) of this section.").

CARMODY & TORRANCE LLP
{W2085923} Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

5

U.S.C. § 105 (creating the National Highway Safety Administration as a division of the Department of Transportation) *with* 49 U.S.C. § 113 (creating the Federal Motor Carrier Safety Administration as a division of the Department of Transportation).  NHSTA is charged with regulating, among other things, the manufacture and sale of the instrumentalities of interstate transportation, such as trailers.  The key statute with respect to NHTSA's regulatory charge is 49 U.S.C. § 30112(a) (Part of Chapter 301 of Title 49), which reads, in relevant part,

> a person may not manufacture for sale, sell, offer for sale, introduce or deliver for introduction in interstate commerce, or import into the United States, any motor vehicle or motor vehicle equipment manufactured on or after the date an applicable motor vehicle safety standard prescribed under this chapter takes effect unless the vehicle or equipment complies with the standard and is covered by a certification issued under section 30115 of this title.

The second agency, FMCSA, is charged with regulating the commercial operations of motor carriers.  The key statute with respect to FMCSA's regulatory charge is 49 U.S.C. § 31136(a) (Part of Chapter 311 of Title 49) which states that the Secretary can regulate to ensure that

> (1) "commercial motor vehicles are maintained, equipped, loaded, and operated safely,"
> (2) "the responsibilities imposed on operators of commercial motor vehicles do not impair their ability to operate the vehicles safely,"
> (3) "the physical condition of operators of commercial motor vehicles is adequate to enable them to operate the vehicles safely," and
> (4) "the operation of commercial motor vehicles does not have a deleterious effect on the physical condition of the operators."

Thus, while motor vehicle safety is also important to the FMCSA, it is NHTSA that is charged with ensuring that the actual instrumentalities of commerce (here, the trailer itself) are safe through the Federal Motor Vehicle Safety Standards ("FMVSS"),

CARMODY & TORRANCE LLP
Attorneys at Law
{W2085953}
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
6

while the FMCSA is charged with ensuring that these instrumentalities are safely operated and maintained while in commerce.

### B. The FMCSA Regulations Do Not Apply To Fontaine And Are Therefore Irrelevant.

#### i. *The FMCSA Regulations do not apply to Fontaine.*

As discussed above, while the FMCSA is charged with regulating the conduct of motor carriers, it is NHTSA that deals with ensuring that the motor vehicles themselves are safely manufactured and designed. This is unequivocally confirmed by an express limitation on the FMCSA's regulatory authority embodied in 49 U.S.C. § 31147(b), which states that "[t]his subchapter does not authorize the Secretary to regulate the manufacture of commercial motor vehicles for any purpose, including fuel economy, safety, or emission control." Thus, given this statute alone, the FMCSA Regulations cannot apply to manufacturers as a matter of law.

This result is also corroborated by the FMCSA Regulations themselves. 49 C.F.R. § 393.1 provides that motor carriers, intermodal equipment providers, and their employees must comply with the requirements and specifications of this part of the regulations. Motor carriers are those that "provid[e] motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). Fontaine does not provide motor vehicle transportation for compensation. As Plaintiffs have alleged, Fontaine only manufactures and sells trailers. (Compl. ¶ 63). Additionally, "intermodal equipment providers" are those "that interchange[] intermodal equipment with a motor carrier pursuant to a written interchange agreement or [those with] contractual responsibility for the maintenance of the intermodal equipment." 49 C.F.R. § 390.5. Fontaine does not participate in any system of interchange of intermodal equipment with motor carriers, nor was Fontaine alleged to

CARMODY & TORRANCE LLP
{W2085933} Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

7

have in the complaint filed by Plaintiffs. Fontaine merely manufacturers and sells trailer equipment. (Compl. ¶ 63).

The FMCSA Regulations in Part 392 cited to by Plaintiffs also do not apply to manufacturers like Fontaine for the same reasons. *See* 49 C.F.R. § 392.1 (applying only to a "motor carrier, [and] its officers, agents, representatives, and employees responsible for the management, maintenance, operation, or driving of commercial motor vehicles, or the hiring, supervising, training, assigning, or dispatching of drivers."). Again, Fontaine is not a motor carrier. Therefore, the FMCSA Regulations do not apply to Fontaine.

> ii. *The FMCSA Regulations are irrelevant to Plaintiffs' claim of product defect.*

Since the FMCSA Regulations do not apply to a motor vehicle manufacturer like Fontaine, they are not relevant to Plaintiffs' claim that the trailer was defective. In *Mottu v. Navistar Int'l Transportation Corp*, the Plaintiff under a products liability cause of action attempted to introduce an FMCSA Regulation from the same "part" of the regulations as the Plaintiffs here as evidence of the existence of a defect. 804 S.W.2d 144, 145-46 (Tex. Civ. App. 1991). A copy of the *Mottu* case has been attached hereto as Ex. A. Specifically, *Mottu* dealt with the applicability of 49 C.F.R. § 393.86, requiring underride guards at certain clearances on trucks, to a products liability action where the truck was not equipped with this device. *Id.* The Texas Court of Appeals found "no indication that the statute or rules [of the FMCSA] are applicable to *manufacturers* of the vehicles used for that transportation; therefore, [49 C.F.R. § 393.86] is not applicable to [the manufacturer] or to the matters at issue during trial." 804 S.W.2d 144, 148 (1991) (emphasis in original). Therefore, the Court held that the trial court had properly excluded the Regulation from evidence as irrelevant. *Id.* Likewise, here, the FMCSA Regulations

cannot be considered by the jury as evidence of the existence of a defect as a matter of law.

Indeed, 49 U.S.C. § 31147(b) mandates the result found in *Mottu* because it provides that the FMCSA *may not* even regulate the "manufacture of commercial motor vehicles for any purpose, including fuel economy, safety, or emission control." The manufacturing process includes the design of commercial motor vehicles. *See* Conn. Gen. Stat. § 52-572m(e) (defining "manufacturer" as "product sellers who *design*, assemble, fabricate, construct, process, package *or* otherwise prepare a product or component part of a product prior to its sale to a user or consumer") (emphasis added); 49 U.S.C. § 30102(a)(8) (defining "motor vehicle safety" as protecting against the unreasonable risk of accidents caused by the "*design*, construction, or performance of a motor vehicle") (emphasis added). Thus, the FMCSA cannot indirectly regulate the manufacture of commercial motor vehicles by requiring any specific design features on the motor vehicle while it is being used by a motor carrier. This would vitiate Congress's clear purpose in allowing the FMCSA to regulate only the manner by which motor carriers operate motor vehicles, not the motor vehicles themselves. *Compare* 49 U.S.C. § 31136(a) *with* 49 U.S.C. § 31147(b).

Therefore, the FMCSA Regulations cited by the Plaintiffs cannot be read to require any design that would bear on the manufacture of the motor vehicle. Instead, the Regulations cited by Plaintiffs are aimed at ensuring that motor carriers *maintain* their vehicles such as by replacing burnt out lights. *See, e.g.,* 49 C.F.R. § 393.9 ("All lamps required by this subpart shall be capable of being operated at all times."). Any

CARMODY & TORRANCE LLP
Attorneys at Law
{W2085933}
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
9

interpretation other than this fails to understand the fundamental division of powers between NHTSA and FMCSA.

### C. The Cited FMCSA Regulations Were Not Violated.

Additionally, the FMCSA Regulations relied upon by Plaintiffs govern the operation of commercial motor vehicles in the ordinary course of their operation, not disabled motor vehicles like the Fontaine trailer in this case. For example, Plaintiffs have cited to 49 C.F.R. § 393.9, which states that "[a]ll lamps required by this subpart shall be capable of being operated at all times." Plaintiffs argue that this regulation means that the lamps on Fontaine's trailer should have been capable of being operated after the tractor-trailer turned over and the trailer broke away from the tractor. This interpretation of the Regulation is improper for the following reasons.

First, the regulatory guidance provided by the Federal Motor Carrier Safety Administration disproves Plaintiffs' interpretation of the Regulations. The FMCSA publishes an Education and Technical Assistance ("ETA") guide to support motor carrier compliance with the FMCSA Regulations, the relevant portions of which have been attached hereto as Ex. B. In the section of the guide for "Lights" and under the heading "Must Be Operable," the ETA guide provides that "[a]ll required lamps must light on request at an inspection and must light when required **during regular operation** of the vehicle." (Emphasis added). While the ETA guide does contain a disclaimer that it is not a substitute for the FMCSA Regulations themselves, it provides strong probative insight into how these regulations are understood by the agency that promulgated them, especially in view of the FMCSA's statutory mandate to only regulate motor carriers in the *operation* of their motor vehicles.

CARMODY & TORRANCE LLP
{W2085933}at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

10

Second, as part of the National Transportation Safety Board's ("NTSB") investigation into the car accident at issue in this case, the FMCSA submitted a "Motor Carrier Group Chairman Report" to the Board entitled "FMCSA Compliance Review." This report has been attached hereto as Ex. C. The Report indicates that the FMCSA investigated the "truck tractor" and the "trailer" involved in the accident for compliance with Parts 392 and 393, among others, of the FMCSA Regulations. (Ex. C, 3, 15). The Report notes that "the trailer used had not had any maintenance performed on its brakes, including adjustment, for over 22 months." (Ex. C, 15). Other than this note, however, no violations of the FMCSA Regulations cited by the Plaintiffs were found. Therefore, the Report provides additional corroborative evidence that the Plaintiffs' interpretation of the FMCSA Regulations must be improper.

As discussed above, the interpretation of the FMCSA Regulations cited by the Plaintiffs is a pure matter of law, which the Court must decide as a prerequisite to admissibility. Fed. R. Evid. 104(a). The issue of whether the Regulations apply even after a disabling accident must be decided by the Court, and the evidence provided above conclusively establishes that the Regulations cited by the Plaintiffs would not apply to the disabled Fontaine trailer at issue in this case.

### D. The FMCSA Regulations Cannot Impose Any Additional Or Different Obligations Than Those Imposed By NHTSA.

There is a yet another, even more fundamental reason why the FMCSA Regulations cannot be relevant to the design of the trailer. The FMCSA is powerless to regulate the design of motor vehicles themselves (as opposed to the operation, inspection, and maintenance of the motor vehicle by a carrier) in a manner that is *in any way* different from NHTSA's Motor Vehicle Safety Standards. *See* 49 U.S.C. § 30103(a).

Congress recognized that there might be some overlap in regulation between the various administrations within the Department of Transportation. Congress determined that NHTSA's regulations should be primary with respect to the design of motor vehicles, while other administrations could regulate other aspects of interstate commercial transportation, such as the conduct of motor carriers in operating such motor vehicles. Thus, Congress enacted 49 U.S.C. § 30103(a), entitled "Relationship to Other Laws" and subheaded "Uniformity of Regulations" which provides that

> "[t]he [Department] of Transportation may not prescribe a *safety regulation related to a motor vehicle* subject to [the Title's Commerce Clause jurisdictional requirements] that *differs from a motor vehicle safety standard prescribed under this Chapter* [pertaining to NHTSA, not the FMCSA]. However, the Secretary may prescribe, for a motor vehicle operated by a carrier subject to [the Title's jurisdictional requirements], a safety regulation that imposes a higher standard of performance *after manufacture* than that required by an applicable standard in effect at the time of manufacture.[6]"

Moreover, as discussed above, 49 U.S.C. § 30102(a)(8) defines "motor vehicle safety" as protection against the unreasonable risk of accidents caused by the "*design*, construction, or performance of a motor vehicle." (emphasis added). Therefore, no agency under the Department of Transportation, including the FMCSA, may prescribe a motor vehicle safety regulation, which includes regulation on design, construction, and performance, that differs from NHTSA's motor vehicle safety standards ("FMVSS").

Therefore, what is made clear by 49 U.S.C. § 30103(a) is that, whatever the FMCSA Regulations purport to do, they cannot vary the Federal Motor Vehicle Safety

---

[6] Thus, the second sentence of the statute provides for the situation where the Secretary decides to increase the level of performance required by the Motor Vehicle Safety Standards and wants existing motor vehicles to be retrofitted to comply with these standards. This sentence of the statute is not implicated by this case.

CARMODY & TORRANCE LLP
Attorneys at Law
{W2085933}
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
12

Standard in effect at the time of manufacture and sale. NHTSA's regulations are meant to provide a uniform standard for the design of motor vehicles themselves.

This result is confirmed by NHTSA's interpretation of 49 U.S.C. § 30103(a). When discussing 49 U.S.C. § 30103(a)'s relationship to the FMCSA Regulations, NHTSA has stated:

> Indeed, many of these types of [FMCSA Regulations] involve aspects of motor vehicle performance that do not remain constant over the life of the vehicle. Thus, some [FMCSA Regulations] address the current operational safety of components which wear over the life and use of the vehicle, while others *cross-reference FMVSSs to ensure that required equipment is in place and maintained*. In this way, the FMVSSs and [FMCSA Regulations] comprise *a consistent and mutually-supportive set of regulations*, as intended by Congress in the Vehicle Safety Act.

70 Fed. Reg. 50277, 50281-82 (2005) (emphasis added). Thus, while the FMCSA Regulations impose a duty upon motor carriers to maintain equipment, they cannot be read to require any additional equipment or varying designs that are not provided for in NHTSA's Federal Motor Vehicle Safety Standards. For example, 49 C.F.R. § 393.9, a Regulation cited by the Plaintiffs, is merely meant to provide for the maintenance and upkeep of the lights required by the Motor Vehicle Safety Standards in the ordinary course of the motor vehicle's operation. It was not meant to (indeed, could not have been meant to) require the use of any break-away lighting systems or alternative designs to that required by NHTSA's Standard 108.

Thus, it is through 49 U.S.C. § 30103(a) that the functional relationship between NHTSA and FMCSA is understood, and this understanding completely undermines Plaintiffs' theory as to the scope and meaning of the FMCSA Regulations. It should also be noted that 49 U.S.C. § 30103(a) (mandating that NHTSA's motor vehicle safety regulations are controlling) is entirely complementary with 49 U.S.C. § 31147(b)

CARMODY & TORRANCE LLP
Attorneys at Law
{W2085933}
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
13

(providing that FMCSA is not authorized to regulate the manufacture of motor vehicles for any purpose, including safety) and further confirms the analysis given above with respect to that statute. *See* Part III. A., *supra*.

### E. Risk of Unfair Prejudice, Confusion of the Issues, and Misleading the Jury.

The above analysis demonstrates that Plaintiffs' overreaching interpretation of the FMCSA Regulations will risk misleading the jury, confusing the issues, and thereby unfairly prejudicing Fontaine's cause. Because the FMCSA is not authorized to regulate the manufacture of motor vehicles and cannot prescribe any standards of motor vehicle safety that differ from those prescribed by NHTSA, the FMCSA Regulations are not relevant to the issue of whether the *design* of the trailer was defective. Plaintiffs' anticipated misuse of regulations that pertain to the operation of commercial motor vehicles in the hands of motor carriers can only mislead the jury and confuse the issues. Therefore, Fontaine alternatively asks for exclusion of this evidence on the basis of Fed. R. Evid. 403. *See Nationwide Transportation Finance v. Cass Information Sys, Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008).

CARMODY & TORRANCE LLP
Attorneys at Law
{W2085933}
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
14

## IV. CONCLUSION

For the foregoing reasons, Fontaine respectfully asks the court to rule *in limine* that Plaintiffs cannot introduce evidence regarding the FMCSA Regulations as evidence of the existence of a defect.

DEFENDANT,
FONTAINE TRAILER COMPANY

By_____
Maureen Danehy Cox
Federal Bar No. ct05499
Carmody & Torrance LLP
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110
Phone: (203) 573-1200
Fax: (203) 575-2600
Email: mcox@carmodylaw.com

CARMODY & TORRANCE LLP
{W2085953} Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
15

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2012, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

_____
Maureen Danehy Cox