UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZACHERY A. BRADLEY, et al., | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | 3:06-CV-00062-WWE |
| | : | |
| FONTAINE TRAILER COMPANY INC., | : | |
|     Defendant. | : | |

### MEMORANDUM OF DECISION ON MOTIONS IN LIMINE RE: FEDERAL MOTOR CARRIER SAFETY REGULATIONS, ALCOHOL CONSUMPTION, and SEVERANCE OF PLAINTIFF MARC GRENIER

This case arises out of a series of accidents that occurred in the early morning hours of January 17, 2003, on Interstate 95 in Fairfield, Connecticut. At approximately 4:50 a.m., Armando Salgado, the driver of a Freightliner tractor that was hauling a flatbed semi-trailer, lost control and overrode the concrete median barrier separating the north and south-bound lanes of travel. The tractor separated from the trailer, thereby cutting off the power to the trailer lights, and the trailer was left straddling the median barrier, partially obstructing the left lane of I-95 North. Eleven minutes later, an SUV driven by Sean Fenton and carrying eight passengers collided with the trailer. Mr. Fenton and three passengers died, and four other passengers were injured.

Thereafter, the decedents' estates and the four injured passengers brought this product liability action against Fontaine Trailer Company Inc. ("Fontaine") alleging that the trailer was defectively designed because it did not have a breakaway lighting device that could sense a separation and maintain power to the trailer's lights.

Defendant expects plaintiffs to contend that the design of the trailer violates one or more of the Federal Motor Carrier Safety Administration ("FMCSA") Regulations and attempt to

present evidence and argument regarding these claimed violations as evidence of a defect. Defendant has moved to exclude evidence regarding the FMCSA Regulations as evidence of the existence of a defect. For the following reasons, defendant's motion will be denied.

In addition, plaintiffs have moved to preclude evidence of plaintiffs' blood alcohol content or alcohol consumption. For the following reasons, plaintiffs' motion will be granted.

Finally, defendant has moved for reconsideration of the Court's *sua sponte* severance order, which separated plaintiff Marc Grenier from the other seven plaintiffs. Defendant's motion for reconsideration will be denied, but the Court will provide in writing the basis for its original decision.

## DISCUSSION

The Connecticut Product Liability Act ("CPLA") procedurally consolidates "all claims or actions brought for personal injury ... caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product." Conn. Gen. Stat. Ann. § 52-572m(b). The CPLA does not alter the substance of a plaintiff's rights. See Winslow v. Lewis-Shepard, Inc., 212 Conn. 462, 470-71 (1989). Thus, plaintiffs' theories of recovery are assessed in light of the Connecticut common-law requirements. Lamontagne v. E.I. Du Pont De Nemours & Co., Inc., 41 F.3d 846, 856 (2d Cir. 1994).

Connecticut courts have adopted the strict liability test established at § 402A of the Restatement (Second) of Torts. Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 214 (1997). That test looks to whether the product in question was sold "in a defective condition unreasonably dangerous to the user or consumer . . ." Restatement (Second) Torts § 402A.

"Under this formulation, known as the 'consumer expectation' test, a manufacturer is strictly liable for any condition not contemplated by the ultimate consumer that will be unreasonably dangerous to the consumer." Potter, 241 Conn. at 211-12. "[T]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Id. at 214-15 (quoting Restatement (Second) Torts § 402A, comment (I). To succeed on a product liability claim in Connecticut, the plaintiff must show that the product was in a defective condition unreasonably dangerous to the consumer or user and that the defective condition existed at the time the product left the defendant's control. Id. at 214. Here, the flatbed trailer left defendant's control when it was sold in 2000.

**FMCSA Regulations**

Defendant has moved to exclude evidence regarding FMCSA Regulations as evidence of the existence of a defect. Defendant contends that since FMCSA Regulations do not apply to manufacturers, they should not be permitted as evidence in a products liability action against a trailer manufacturer. Defendant submits that evidence of FMCSA Regulations should be excluded because it is irrelevant, or, alternatively, because it would be unfairly prejudicial, confusing, and misleading to the jury.

The Supreme Court has held that even Federal Motor Vehicle Safety Standards ("FMVSS"), which *are* enforced against manufacturers, do not necessarily preempt strict products liability claims. Williamson v. Mazda Motor of America, Inc., 131 S.Ct. 1131, 1140 (2011). Thus, plaintiffs may bring claims against manufacturers despite the manufacturers' compliance with FMVSS. Indeed, compliance with federal regulations is not at issue. Rather,

the question is whether defendant's trailer was unreasonably dangerous at the time it was sold. FMCSA Regulations that address trailer safety, even if aimed at motor carriers, may be relevant to that determination.

It is undisputed that the FMCSA Regulations focus on motor carriers, not manufacturers. Compliance with FMCSA Regulations is not dispositive as to the existence of a design defect. The jury may be so instructed. However, NHTSA Regulations, which do apply to manufacturers, work in tandem with FMCSA Regulations to optimize roadway safety. While defendant seeks to compartmentalize the design regulations imposed by NHTSA from the maintenance and operation regulations required by FMCSA, NHTSA itself has stated:

> Indeed, many of these types of [FMCSA Regulations] involve aspects of motor vehicle performance that do not remain constant over the life of the vehicle. Thus, some [FMCSA Regulations] address the current operational safety of components which wear over the life and use of the vehicle, while others cross-reference FMVSSs to ensure that required equipment is in place and maintained. In this way, the FMVSSs and [FMCSA Regulations] comprise a consistent and mutually-supportive set of regulations, as intended by Congress in the Vehicle Safety Act.

70 Fed. Reg. 50277, 50281-82 (2005).

Although FMSCA Regulations may not be enforced against manufacturers, manufacturers such as defendant must be apprised of FMCSA Regulations during the design and manufacturing process to ensure that their trailers are marketable. Safety regulations developed to govern performance and operational safety of a product may be relevant to whether the product was unreasonably dangerous as sold regardless of a regulating agency's ability to enforce the regulations against the manufacturer.

> With respect to other manufacturing standards . . . a roadside inspection cannot tell the inspector whether the safety equipment, as originally

> manufactured, was effective enough to have actually complied with the applicable FMVSS. In these instances, however, the operating standard itself is designed to ensure that the motor vehicle is currently operating in a safe condition. Indeed, many of these types of standards involve aspects of motor vehicle performance that do not remain constant over the life of the vehicle. Thus, some FMCSRs address the current operational safety of components which wear over the life and use of the vehicle, while others cross-reference FMVSSs to ensure that required equipment is in place and maintained. In this way, the FMVSSs and FMCSRs comprise a consistent and mutually-supportive set of regulations, as intended by Congress in the Vehicle Safety Act.

70 FR 50277-01 PROPOSED RULES, DEPARTMENT OF TRANSPORTATION, National Highway Traffic Safety Administration, 49 CFR Parts 567, 576 and 591.

Alternatively, defendant contends that FMCSA Regulations are inapplicable here because the trailer was not in the ordinary course of its use, as it had been seriously damaged in an accident. Nevertheless, the material time frame for this product liability case is the time of sale. The Court is not allowing plaintiffs to "apply" the FMCSA Regulations with the purpose of determining whether a violation occurred while the trailer was normally functioning, after it was damaged, or at any other time. Rather, the Court is allowing evidence of the Regulations to aid the jury's determination of whether the trailer was unreasonably dangerous at the time the product left the defendant's control.

Risk of misleading the jury may be avoided, as stated above, by informing them that compliance with FMCSA Regulations is neither required of manufacturers nor dispositive of the ultimate question of defect. Moreover, the jury will be adequately instructed as to the time frame relevant to liability: the time of the trailer's sale. Therefore, defendant's motion to exclude evidence regarding the FMCSA Regulations will be denied.

**Evidence of Alcohol Consumption**

Plaintiffs have moved to preclude evidence of plaintiffs' blood alcohol content or alcohol consumption. Defendant contends that the effects of alcohol are highly relevant to its affirmative defenses alleging comparative negligence, which have been raised against all plaintiffs in this action - not only against Mr. Fenton, the driver of the Tahoe - but also against the passengers in the vehicle who made the decision to ride with Mr. Fenton.

Defendant aims to introduce evidence that Mr. Fenton drank a beer in the hours preceding the accident. Despite stipulating that Mr. Fenton had a blood alcohol content of 0.0, defendant asserts that this evidence is relevant because its expert will testify that even one beer would have had an effect on Mr. Fenton's driving performance, namely, increasing his level of fatigue.

Defendant also argues that the alcohol consumption of the plaintiff passengers leading up to the accident is probative of: (1) whether they were awake or asleep; (2) what they observed of Mr. Fenton's driving performance; and (3) whether they were talking with him in an effort to keep him alert or distracting him with "drunken activities."

Although the plaintiff passengers' level of alcohol consumption is arguably relevant to their powers of perception, the subject of their observation and the content of their interaction with the driver cannot be significantly revealed through evidence of imbibition. Alcohol consumption is similarly not probative of whether the passengers were awake or asleep. The inferences defendant wishes the jury to draw are too weak to overcome the powerful, unfair prejudice attached to fraternity binge-drinking, especially where both parties agree that none of the plaintiffs have any recollection of the accident.

Evidence that Mr. Fenton, the driver, drank a beer sometime before the accident will also

be excluded.  Indeed, unfair prejudice is almost automatic or reflexive when an automobile operator is deemed to have been under the influence of alcohol, and defendant intends to refer to such evidence in counsel's opening statements.  Here, defendant does not aim to demonstrate influence in the traditional sense, given that Mr. Fenton's blood alcohol content was 0.0.  Rather, defendant contends that consumption of the beer made Mr. Fenton more tired than he otherwise would have been.  Nevertheless, countless factors may have affected Mr. Fenton's level of fatigue.  While consumption of the beer may be one of them, its probative value is substantially outweighed by a danger of unfair prejudice.  Therefore, all evidence of alcohol will be excluded.

### Severance of Marc Grenier

Defendant has moved for reconsideration of the Court's order severing the claims of plaintiff Marc Grenier, Administrator of the Estate of Nicholas Grass, from the claims of the other seven plaintiffs.  Defendant's motion will be denied.  Nevertheless, the Court agreed to provide a written decision regarding severance and will do so now.

District Courts in this Circuit examine the following factors in deciding whether to grant a severance under Rule 21: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." Morris v. Northrop Grumman Corp., 37 F. Supp. 2d 556, 580 (E.D.N.Y 1999).  Here, all claims arise out of the same occurrence, present common questions of law and fact, and do not require different witnesses and documentary proof.  Facilitation of judicial economy may also weigh against severance.  However, the Court is not

persuaded by defendant's argument that severance will result in duplicative trials.  The experience and outcome of the first trial may significantly change the positions of the remaining parties.  Therefore, facilitation of judicial economy is speculative at this juncture.  The Court finds that significant prejudice to the other seven plaintiffs necessitates severance of plaintiff Grenier.

The Court initially ordered severance because of admissions made by Mr. Grenier in state court pleadings as to the cause of the accident.  Defendant concedes that Mr. Grenier has made additional factual allegations about causation that other plaintiffs have not, namely, that Mr. Fenton, the driver of the vehicle, was "excessively fatigued," "sleep deprived," and "exhausted," and that Fenton's "sleep-deprivation" was a substantial cause of the accident."  Defendant argues that these allegations are no different in character or effect than the many allegations made by the other plaintiffs, i.e., they are factual statements indicating that some person other than Fontaine caused the accident.  Defendant contends that there is no reason to treat Mr. Grenier's allegation that Mr. Fenton was exhausted any differently from, e.g.,  his and the other plaintiffs' allegations that construction companies knocked over the highway light pole or from his and the other plaintiffs' allegations that State employees failed to properly salt the roadway.

Plaintiff Grenier's allegations are different in character and effect from other allegations made by other plaintiffs because while the Connecticut Product Liability Act provides for comparative fault, it does not allow for apportionment against non-parties to reduce liability.  Conn. Gen. Stat. § 52-572m *et seq*.  Mr. Grenier's allegations place responsibility for the accident explicitly on Mr. Fenton and implicitly on the remaining plaintiffs through association with the fraternity against which the complaint was made.  Although other allegations made by

8

other plaintiffs also relate to the cause of the accident, only Mr. Grenier's allegations are likely to directly reduce any amount of compensatory damages by increasing the responsibility or fault that the fact finder assigns to plaintiffs.

As stated, *supra*, Mr. Grenier's claims against the Fraternity directly implicate Mr. Fenton and seek a finding that he was too impaired to drive.  The other plaintiffs felt so strongly that there was no claim against the Fraternity that they moved in opposition to Mr. Grenier for summary judgment on the claims.  Moreover, the phrasing of the claims is so inflammatory and prejudicial that no corrective or limiting instruction could cure the damage that would be done to the other plaintiffs.  The briefs and oral argument contain statements the other seven plaintiffs have not adopted and with which the other seven plaintiffs strongly disagree.  For example, in the excerpted transcript of the oral argument, counsel for Grass uses terms such as "hell week," "hazing," "torture," and "Animal House."  Although inadmissible against the other plaintiffs, evidence of Mr. Grenier's allegations is likely to severely prejudice them.  This significant prejudice can only be avoided through severance.

## CONCLUSION

For the foregoing reasons, defendant's motions to exclude FMCSA evidence [Doc. #201] and for reconsideration of the Court's severance order [Doc. #273] are DENIED.  Plaintiffs' motion to exclude evidence of alcohol consumption [Doc. #220] is GRANTED.

Dated this 4th day of January, 2012, at Bridgeport, Connecticut.

                                                     /s/
                                      WARREN W. EGINTON
                                      SENIOR UNITED STATES DISTRICT JUDGE